PAUL T. MENZEL and wife, SARAH E. MENZEL (nee SARAH E. CREEK-
MORE) v. LUCILLE R. MENZEL and PAULINE C. MENZEL, infant
children of plaintiffs; MILES N. OVERTON and GRANDY B.
OVERTON.

AND

PAULINE MENZEL WILLIAMS, Petitioner, Movant v. CHARLES CAM-
DEN BLADES, MELICK WEST BLADES, and LEMUEL SHOWELL
BLADES, Jr., Trustees under that certain agreement recorded in
Deed Book 98 at page 402, office of the Register of Deeds of Pasquo-
tank County; SARAH E. MENZEL (nee SARAH E. CREEKMORE),
and KILLIAN BARWICK, Guardian Ad Litem.

(Filed 12 April, 1961.)

**1. Judgments § 27—**

While the judgment roll alone is to be considered in determining a
motion to set aside a judgment for irregularity, a recorded deed and
deeds of trust executed by the person acquiring title under the judgment
may be considered by the court for the purpose of showing knowledge
of the claim of fee simple title by virtue of the judgment in determining
the question of laches.

**2. Appeal and Error § 41—**

Appellant may not assert the admission of certain evidence as error
when he himself has introduced evidence of the same import.

**3. Infants § 6:   Process § 9—**

Defects in the application for service of process by publication and
in the order directing publication are rendered immaterial when the
guardian *ad litem* for the minors sought to be served, appears and de-
fends the action.

**4. Judgments § 2—**

The recitals in an order of the judge presiding at the term that the
parties consented to the hearing of the case out of term and in a desig-
nated county, and the recital in the judgment of the judge thereafter
hearing the case in the designated county that the case came on for
hearing in that county by consent decree and that all parties were then
before the court, are sufficient to support a finding that the hearing out
of the county and out of term was by consent.

**5. Same:   Judgments § 27—**

The hearing of the cause and the rendition of judgment out of term
and out of county by consent does not transfer the cause to the county
in which judgment is actually entered, and such judgment properly ap-
pears on the judgment roll in the county in which the action was in-
stituted, and that judgment roll and judgment signed by the judge hold-
ing the term in the county in which the action was heard establish the
rendition of the judgment notwithstanding nothing appears in the judg-
ment roll in the county in which the judgment was actually rendered.

**6. Estates § 7—**

A judgment that a named person owned a life estate in the lands

in suit with remainder over to others, and directing that the lands be sold for reinvestment and that the value of the life estate be ascertained, contemplates the sale of the fee simple and not merely the life estate for reinvestment.

**7. Infants § 6—**

Where it is ordered that by consent of the parties a cause should be heard and judgment rendered in another county of the district, such order does not remove the cause from the county in which it was instituted, and the clerk of the court of that county has authority to appoint a guardian *ad litem* for minor defendants in the action and to accept and file such guardian's verified answer, and the guardian's appearance in the adjoining county and participation in the hearing waives any objection to the hearing outside the county.

**8. Same: Judgments § 21—**

An order for the appointment of a guardian *ad litem* which finds that a named person was a proper and suitable person to represent the minors, but leaves blank the space provided for naming the appointed person, is irregular, but when the person named as a suitable person files verified answer and represents the minors at the hearing no prejudice results, and the judgment is at most voidable for irregularity and not void.

**9. Appeal and Error § 49—**

Findings of fact by the trial court are conclusive on appeal when supported by competent evidence.

**10. Judicial Sales § 5—**

In the absence of fraud or the knowledge of fraud, the purchaser at a judicial sale is required only to ascertain from the record that the court had jurisdiction of the parties and the subject matter and that the judgment authorized the sale, and when the record is regular on its face in these respects, the *bona fide* purchaser acquires good title.

**11. Same—**

Where the commissioner's deed identifies the lands as those owned by a certain person and more particularly described in designated registered deeds, and it further appears that a map of the lands had been recorded, the description in the commissioner's deed is sufficient, since that is certain which can be made certain.

**12. Judicial Sales § 4—**

A judgment of confirmation of a judicial sale is a final judgment.

**13. Judgments §§ 24, 27—**

Upon the hearing of a motion in the cause to set aside a judgment for irregularity, evidence that the judgment had been obtained by extrinsic fraud is properly excluded, since the sole remedy to set aside a final judgment for fraud is by independent action.

**14. Judgments § 21—**

While the court may set aside an irregular judgment at any time,

it will not do so when movant has been guilty of unwarranted laches, particularly when the rights of *bona fide* purchasers for value are involved.

**15. Same:   Judicial Sales § 5—**

Lands in which minors owned a remainder were ordered sold for reinvestment and judgment confirming the sale was duly entered. Irregularities appeared on the face of the record of the proceedings which rendered the judgment voidable but not void. The *bona fide* purchaser at the sale had been in possession for some forty-five years after the execution of commissioner's deed to him and thirty-one years elapsed after movant became of age. *Held:* The record discloses laches warranting the refusal of the court to set aside the judgment for irregularity.

**16. Estates § 3—**

While the statute of limitation does not begin to run against a remainderman until the death of the life tenant, a remainderman may attack a judgment adjudicating title in a stranger at any time after the rendition of such judgment, and the failure of the remainderman to do so may be imputed to him as laches, in proper instances, even during the life time of the life tenant.

APPEAL by movant from *Bone, J.,* September Term 1960, of CAMDEN.

This is a motion in the cause, filed by Pauline Menzel Williams on or about 30 December 1958. The reasons for filing said motion and the factual background giving rise thereto are fully set out in detail in the opinion of this Court in the case of *Menzel v. Menzel* and *Williams v. Blades,* 250 N.C. 649, 110 S.E. 2d 333. The motion on that appeal had been dismissed by Paul, J., upon consideration of Pauline Menzel Williams' notice and motion and her affidavits and petition, and the respondents' request for denial of the motion. This Court held that the motion and affidavits were "sufficient to require the court to investigate the charge of irregularities, hear the evidence, and make proper findings based thereon."

The case is now before us a second time, on appeal from Judge Bone's order based on his findings of fact and conclusions of law made pursuant to the former opinion of this Court.

Pertinent portions of the facts found by the court below are in substance as follows:

1. That summons was issued against the defendants by the Clerk of the Superior Court of Camden County on 12 February 1912, and on the same date a prosecution bond was signed by Paul T. Menzel, Sarah E. Menzel, and Charles W. Priddy.

2. The summons was received by the Sheriff of Camden County on 27 February 1912 and returned with the endorsement thereon, "All within defendants not to be found in my county."

3. That on 12 May 1912, Sarah Creekmore Menzel signed and swore to an application for an order directing service of summons by publication but it was not set forth in said application that the defendants had property in this State, nor that they had or claimed any contingent lien or interest in real property which was the subject of the action, nor that the relief demanded consisted wholly or partly in excluding them therefrom.

4. That at the Spring Term 1912 of Camden Superior Court the Clerk signed an order reciting in substance the facts appearing in the aforesaid application and directing service by publication.

5. Publication was had as directed, requiring the defendants to answer or demur to the complaint but not giving the purpose of the action other than to state that it was "concerning real estate, of which the Superior Court of said County had jurisdiction."

6. At the Fall Term 1912 of Camden County Superior Court a complaint was filed in which it was alleged that it was for the best interest of those who might own the land to sell it and invest the proceeds. The complaint prayed for judgment declaring that Sarah E. Menzel owned said lands in fee simple. There was no allegation or prayer in the complaint regarding the computation of the cash value of the life estate of Sarah E. Menzel. The complaint was signed by Peatross & Savage and Pruden & Pruden, attorneys for plaintiffs, and verified by the plaintiff Paul T. Menzel.

7. That at the Spring Term 1913 of Camden County Superior Court, Pruden & Pruden, attorneys for the plaintiffs, applied to the court for the appointment of a guardian *ad litem* to represent the interest of Lucille and Pauline Menzel, infant defendants. On 12 March 1913 the Clerk of said court signed an order directing that C. E. Thompson was a suitable and discreet person to represent their interest in the court and adjudging "that .......... .......... .. ........................ be and is hereby appointed guardian *ad litem* to represent the infant defendants in this cause and is directed to appear and defend the same in their behalf."

8. That on 12 March 1913, C. E. Thompson as guardian *ad litem* for said infant defendants verified before the clerk and filed an answer to the complaint admitting all the facts alleged but denying the legal conclusions.

9. That on 11 March 1913, Judge B. F. Long, who presided over the Spring Term 1913 of Camden Superior Court, entered an order reading as follows: "In this cause all parties consenting it is considered and adjudged that the same be heard out of term and out

of the County at Spring Term 1913 of Chowan County Superior Court."

10. That at the Spring Term 1913 of Chowan County Superior Court, which term began on 31 March 1913, Judge H. W. Whedbee heard the matter pursuant to the aforesaid order of Judge Long and rendered judgment which was recorded in the Minute Docket of Camden County Superior Court immediately following the order of Judge Long, both said order and said judgment being among the minutes for the day of 11 March 1913 (erroneously dated 11 March 1912).

11. That after considering all the facts and circumstances surrounding the matter, as disclosed by the record and evidence, the court concluded and found as a fact that the hearing before Judge Whedbee in Chowan County was heard by consent of the attorneys for the plaintiffs and of C. E. Thompson, guardian *ad litem* for the infant defendants.

12. That the aforesaid judgment of Judge Whedbee adjudged: That the land in question was owned by the plaintiff Sarah E. Menzel for life, with remainder in fee simple to such issue as might survive her, and if none, over to Miles N. Overton and Grandy B. Overton in fee simple; that it was for the best interest of all parties to the action that the land be sold at public auction and the proceeds be reinvested under order of the court; that J. N. Pruden be appointed commissioner to make the sale and report the same to the next term, and further ordering that the value of the life estate of Sarah E. Menzel be computed and paid to her, or allowed in payment for said land, should she become the purchaser.

13. That J. N. Pruden, commissioner, advertised and sold said lands pursuant to said judgment at the courthouse door of Camden County on 6 October 1913, and reported to the November Term 1913 of Camden County Superior Court that he had done so and that Sarah E. Menzel became the purchaser at the price of $3,200 and recommended that the sale be confirmed.

14. That in said report the commissioner stated that Sarah E. Menzel was dissatisfied with the clerk's computation of the value of her life estate and had appealed to the court and he requested that the court decide the matter and instruct him as to the sum which should be allowed her in settlement for the purchase price.

15. That at the November Term 1913 of Camden County Superior Court, Judge Stephen C. Bragaw, who presided over said term, entered a decree confirming said sale, directing the commissioner to make title to the said Sarah E. Menzel upon compliance with the terms of sale, sustaining her contention as to the value of her life estate, and

directing the commissioner to pay to the clerk the balance of the proceeds of the sale to be held by him for investment under order of the court.

16. That on 3 December 1913, J. N. Pruden filed with the clerk his account as commissioner, showing that he had received $3,200 as proceeds of the sale of the land, had paid costs in the sum of $70.35, had paid $2,658.68 to Sarah E. Menzel for her life interest and had paid to J. W. Walston, Clerk of the Superior Court of Camden County, the sum of $470.97 as the interest of the infants, Pauline and Lucille Menzel.

17. That on 3 December 1913, said clerk signed a receipt showing that he had received of the commissioner $470.97 in full settlement of the amount due the infants Pauline and Lucille Menzel out of the proceeds of said sale, and on 26 December 1913 Sarah E. Menzel signed a receipt showing that she had received from the commissioner $2,658.68 in full settlement of the amount due her as life tenant out of the proceeds of the sale of said land, both of said receipts being among the papers in this action.

18. It further appears that on or about 31 January 1914, Paul T. Menzel qualified as guardian for the infants Pauline and Lucille Menzel in the court of Hustings, City of Portsmouth, State of Virginia, and apparently received the said sum of $470.97 as guardian for said infants.

19. That on 25 November 1913, J. N. Pruden, commissioner, made a deed to Sarah E. Menzel sufficient in form to convey to her the fee simple title to the lands involved in this action, which deed was duly registered in the office of the Register of Deeds of Camden County on 29 November 1913.

20. That on 26 November 1913, Sarah E. Menzel and husband executed a deed of trust to J. N. Pruden, trustee, conveying the fee simple title in the aforesaid lands as security for a debt of $2,450 due to John Q. A. Wood; that the acknowledgment of said instrument and the private examination of Sarah E. Menzel was had before the Clerk of the Superior Court of Pasquotank County and the instrument was duly registered in the office of the Register of Deeds of Camden County on 29 November 1913.

21. That on 16 May 1917, Sarah E. Menzel and husband executed a deed of trust to H. G. Kramer, trustee, conveying in fee simple the lands in question as security for a debt of $4,850 due the Savings Bank and Trust Company; that the acknowledgement and private examination of Sarah E. Menzel as to said instrument was had before W. I. Halstead, a Notary Public, and the same was duly registered

in the office of the Register of Deeds of Camden County on 28 May 1917.

22. That the aforesaid deed of trust to H. G. Kramer was foreclosed, and acting in accordance with the power of sale therein said trustee sold the land at public auction at the courthouse door in Camden County on 30 July 1923, after due advertisement as required by law, at which sale C. E. Thompson became the highest bidder for the price of $8,200, which bid was not raised within the time allowed by law and said C. E. Thompson having transferred his bid to L. S. Blades, the trustee, on 10 August 1923, conveyed the said lands in fee simple to said L. S. Blades upon payment by him of the purchase price and said deed of conveyance was duly recorded in the office of the Register of Deeds of Camden County on 15 August 1923.

23. That on 1 July 1940, L. S. Blades and wife conveyed said lands in fee simple to the trustees who are respondents to the present motion and the deed of conveyance was duly recorded in the office of the Register of Deeds of Camden County on 8 July 1940.

24. That soon after his purchase of said lands in August 1923, the said L. S. Blades went into possession of the same, claiming it as his own, making improvements thereon, cutting some of the timber therefrom in 1923 or 1924, causing a survey thereof to be made and a map labeled "Property of Dr. L. S. Blades" to be prepared and recorded, cultivating crops thereon each year and engaging in the usual acts of ownership openly, notoriously and continuously until the time when respondents took possession thereof and since said time respondents have been in possession of said lands exercising similar acts of ownership.

25. That prior to the filing of the present motion, the movant, Pauline Menzel Williams, had taken no action to have the various orders, decrees, judgments, and other proceedings herein set aside.

26. That movant was born 31 August 1906, being five years of age at the time of the commencement of this action, 17 years of age when the land was bought by L. S. Blades at the foreclosure sale, about 17 years of age when she was married, 21 years of age in August 1927, and 52 years of age when the present motion was filed.

27. That Sarah E. Menzel, movant's mother, and Paul T. Menzel, movant's father, were married in 1900; that movant's sister, Lucille Menzel, died at age 24 years without issue; that movant is the only living issue of Sarah E. Menzel, who was 79 years of age in September 1958; that Paul T. Menzel died about 1954.

28. That in 1912 movant was living in Portsmouth, Virginia, with her family where she continued to reside until 1914 when she and

her family moved on the land in question and lived there until June 1923 when they moved off and went to Norfolk, Virginia; that movant lived in Norfolk, Virginia until her marriage in 1924 when she came to South Mills, North Carolina, and after living there for a short while moved with her husband to Elizabeth City, North Carolina, where she has continued to live until the present time.

29. That movant is an intelligent, well-informed woman who attended high school and took a high school course at Blackstone College but did not finish high school; that she has worked for the Pasquotank County Public Library for about ten years, operating a bookmobile in both Pasquotank and Camden Counties; that she is familiar with the land in question, has seen it frequently and has lived about five miles from Camden County Courthouse most of the time since her marriage; that movant's husband is a former member of the State Legislature, a man of considerable business experience, has business interest in Camden County and is familiar with the public records.

30. That the evidence does not show what education or business experience Sarah E. Menzel, movant's mother, has had but there is no suggestion that she is either illiterate or ignorant of ordinary business transactions; that although now at the age of 79 years, disclaims in her affidavit any knowledge of the proceedings herein, the records show that she signed several of the papers in connection with the same, had the fee simple title to the land in her name and executed several instruments conveying the fee simple title in trust to secure debts; that although she asserts in her affidavit that her husband practiced a fraud upon her she does not give any particulars as to what the fraudulent representations were.

31. That movant, in the exercise of ordinary business prudence, could have and should have discovered the irregularities of which she now complains, at least 20 or more years ago, and could have or should have known that respondents and their predecessor in title were claiming ownership in fee simple of the land in question; that in failing to take action herein before December 1958, movant has been guilty of laches and unreasonable delay.

32. That L. S. Blades was a *bona fide* purchaser for value of the land in question without notice of the irregularities in this action of which movant now complains, and respondents took title from him without notice of such irregularities.

33. That the defendants Miles M. Overton and Grandy B. Overton are both dead and there is no evidence before the court from which the names, indentity or legal status of their living issue, or their

successors in interest, can be ascertained; that pursuant to an order of Judge Frizzelle dated 13 April 1960 a notice was published requiring contingent remaindermen and claimants to appear and answer or demur, but no one has appeared in response thereto; that Killian Barwick was appointed as guardian *ad litem* for all contingent remaindermen and claimants, by order of the clerk dated 17 August 1960, and has filed answer requesting the court to determine the interests of the persons for whom he was appointed and to protect their interest but he has taken no definite position on the question as to whether or not movant's motion should be allowed, nor has he informed the court as to the names, identity or legal status of the persons whom he was appointed to represent, apparently not being able to do so.

Upon the foregoing facts the court concluded:

"1. That although there are irregularities in the proceedings herein, the movant, who has been guilty of laches and unreasonable delay in making her motion, is not entitled to have the same allowed against respondents, who hold title under a *bona fide* purchase for value without notice, and who themselves took title without notice of such irregularities, and

"2. That Killian Barwick, guardian *ad litem,* is not entitled to any affirmative relief herein on behalf of contingent remaindermen, claimants and persons whose names, identity and legal status cannot be ascertained.

"Now, therefore, it is by the court, ordered, adjudged and decreed:

"1. That the said motion of Pauline Menzel Williams be and it is hereby denied.

"2. That no affirmative relief be granted to Killian Barwick, guardian *ad litem.*

"3. * * *"

Movant appeals, assigning error.

*Leroy, Goodwin & Wells; Pritchett & Cooke for movant appellant. Worth & Horner; John H. Hall for respondents appellee.*

DENNY, J.     Assignments of error Nos. 1, 2, 3, 4, 5, 6, and 8 are to the admission in evidence of the deed from J. N. Pruden, commissioner, to Sarah E. Menzel, dated 25 November 1913, purporting to convey a fee simple title to the lands in controversy, and recorded in Book 7, at page 557, in the office of the Register of Deeds in Camden County, and six deeds of trust, duly executed and acknowledged by Sarah E. Menzel and her husband after the execution and registration

of the above deed, each of which purported to convey the fee simple title to said lands to secure the indebtedness indicated in the respective instruments, each of said instruments having been duly recorded in the office of the Register of Deeds of Camden County.

In our opinion, these assignments of error are without merit since the movant introduced in evidence the affidavit of her mother, Sarah E. Menzel, in which she disclaimed any knowledge of the proceeding which the movant seeks to set aside. The movant takes the position that her mother, Sarah E. Menzel, was seized only of a life estate in the lands involved and that she never became aware of the fact that her remainder interest was claimed by the respondents until 1957. It is not controverted, however, that Mr. and Mrs. Menzel and their infant children lived in Portsmouth, Virginia, prior to 1914. Moreover, after Sarah E. Menzel procured the deed from J. N. Pruden, commissioner, conveying to her the fee simple title to said lands, she and her husband and their infant children moved on the land and continued to reside thereon until June 1923, the month before the sale of the lands under foreclosure pursuant to the terms of a deed of trust executed by Sarah E. Menzel and her husband, dated 16 May 1917, to secure an indebtedness of $4,850. These assignments of error are overruled.

Assignment of error No. 7 is based on an exception to the introduction in evidence of a plat, recorded in Plat Book 1, page 21, in the office of the Register of Deeds of Camden County, which map bears the legend "Property of Dr. L. S. Blades, Camden County, North Carolina."

The movant likewise introduced in evidence in the hearing below the affidavit of her mother, Sarah E. Menzel, in which she swore that the lands in which she inherited a life interest and her daughter the remainder were the lands "shown on a map recorded in Plat Book 1, page 21, Camden County Register's office." She further offered the affidavit of one Issac Meiggs to the effect that he had cut timber off this land "at the instance of Dr. L. S. Blades." We do not think the introduction of this map was prejudicial to the movant, and this assignment of error is overruled.

Assignment of error No. 9 challenges findings of fact Nos. 4 and 5 with respect to the application for service of process by publication and the order directing publication. As we construe the findings of the court below, it is not contended that proper service on the infant defendants was obtained either by personal service or by publication. It would seem, however, that the irregularities and defects in the attempted service by publication are immaterial if the appointment of

the guardian *ad litem* for the infant defendants is held to be valid. Hence, this assignment of error is overruled.

The movant's assignments of error Nos. 10 and 11 are to findings of fact Nos. 10 and 11. Finding of fact No. 10 is to the effect that at the Spring Term 1913 of Chowan County Superior Court, which began on 31 March 1913, Judge Whedbee heard this cause pursuant to the order of Judge Long and rendered a judgment which was recorded on the Minute Docket of Camden County. The movant contends that there is no evidence to support the finding that Judge Whedbee heard the cause at the 1913 Spring Term of Chowan Superior Court. The movant further contends there is no evidence to support finding of fact No. 11, to the effect that the "hearing before Judge Whedbee in Chowan County was had by consent of the attorneys for plaintiffs and of C. E. Thompson, guardian *ad litem* for the infant defendants."

In this connection it was stipulated in the hearing below that "Judge Harry W. Whedbee held the Spring Term of Superior Court for Chowan County 1913 and that said term commenced on March 31, 1913, and adjourned April 3, 1913."

The judgment roll in Camden County, introduced by the movant in the hearing below for the purpose of attack and by the respondents for all purposes, contains a judgment purporting to have been signed by Judge Whedbee. The judgment, among other things, contains the following: "Superior Court, Camden County, N. C. (Title of case.) Present Hon. Harry W. Whedbee, Judge Presiding. This cause coming now to be heard by the court at Chowan Superior Court by consent decree, upon the pleadings and exhibits therein, and being heard after argument, by counsel, all parties being before the court and the infant defendants represented by C. E. Thompson, Esq., guardian *ad litem,* duly appointed: It is considered and adjudged by the court:" etc. In this judgment Sarah E. Menzel was adjudged to be the owner of a life estate in the lands devised to her by Bailey J. Overton, with remainder to such issue of Sarah E. Creekmore (now Sarah E. Menzel) as should be living at her death and if none should then be living, then to Miles N. Overton and Grandy B. Overton in fee simple. It is set forth in the said judgment that it was for the best interest of the parties to sell the lands involved and invest the proceeds from such sale under orders of the court. J. N. Pruden was appointed commissioner to sell the lands and to report the sale to the next term of court, succeeding date of sale, and the judgment further provided for the value of the life interest of Sarah E. Menzel to be ascertained and credited on the purchase price of said lands should she

become the purchaser thereof. This confirms the fact that the court contemplated the sale of the lands involved in fee simple, otherwise there could have been no possible reason for ascertaining the value of the life estate of Sarah E. Menzel. These assignments of error are overruled.

The movant's assignment of error No. 12 is to the judgment signed by Judge Whedbee, on the ground that it was entered without consent, out of term and out of the county. She therefore contends that said judgment was null and void.

It appears from the court records in Camden County, introduced in the hearing below, that during the Spring Term 1913 of the Camden Superior Court that B. F. Long, Judge Presiding, entered the following order in this case: "In this cause all parties consenting it is considered and adjudged that the same be heard out of term and out of county at Spring Term 1913 of Chowan County Superior Court." This order was not dated, but the evidence tends to show it was entered 11 March 1913, since it appears in the minutes of the court under that date. However, on 12 March 1913, C. E. Thompson filed a verified answer as guardian *ad litem* of the infant defendants in this cause in the office of the Clerk of the Superior Court of Camden County. The fact that Judge Long ordered the hearing out of term and out of the county did not remove the case from Camden County. Therefore, the Clerk of the Superior Court of Camden County had authority to appoint a guardian *ad litem* for the infant defendants if it be conceded that application for such appointment was made after the above order was entered. Likewise, the court had the power to accept and file the guardian *ad litem's* verified answer in Camden County after the order for the hearing in Chowan County was made. Moreover, if the guardian *ad litem* was before the court and participated in the hearing in Chowan County as recorded in Judge Whedbee's judgment, and found as a fact by Judge Bone, such appearance would constitute a waiver of any objection to the hearing before Judge Whedbee.

The irregularity complained of in the appointment of the guardian *ad litem* for the infant defendants appears to be a mere clerical error or omission, and the fact that C. E. Thompson who was found by the Clerk of the Superior Court of Camden County to be a suitable person to represent the defendants, coupled with the fact that he filed a verified answer on behalf of the defendants and represented them in the hearing before Judge Whedbee, and so found as a fact by Judge Bone, leads us to the conclusion that such court had jurisdiction of the infant defendants and that no predudicial error in connection

therewith is made to appear. Therefore, the judgment entered by Judge Whedbee was not void, and at most was only voidable for irregularity not apparent on its face. *Franklin County v. Jones*, 245 N.C. 272, 95 S.E. 2d 863, and cited cases; *Gillikin v. Gillikin*, 252 N.C. 1, 113 S.E. 2d 38; *Glisson v. Glisson*, 153 N.C. 185, 69 S.E. 55; *Tate v. Mott*, 96 N.C. 19, 2 S.E. 176. This assignment of error is overruled.

Assignments of error Nos. 13 and 14 challenge the correctness of the finding that J. N. Pruden advertised the lands involved herein and sold them on 6 October 1913 and reported such sale to the November Term 1913 of the Camden County Superior Court and that Sarah E. Menzel became the purchaser at the price of $3,200 and recommended that the sale be confirmed; and further attacking the finding of fact that Sarah E. Menzel was dissatisfied with the Clerk's computation of the value of her life estate. Such findings are supported by the records in Camden County which were introduced in the hearing below; therefore, these assignments of error are overruled.

Assignment of error No. 15 presents no prejudicial error and is overruled.

Assignments of error Nos. 16, 17, 18 and 19 challenge findings of fact Nos. 19, 20, 21 and 22, set out hereinabove. The movant denies that there is any evidence to support finding of fact No. 19 with respect to the execution of the deed on 25 November 1913 by J. N. Pruden, commissioner, sufficient in form to convey to her the fee simple title to the lands involved. The other assignments are to the findings with respect to the execution of the deeds of trust set out in findings of fact Nos. 20 and 21 and with respect to the foreclosure of the deed of trust as set out in finding of fact No. 22. The movant contends these findings are immaterial, irrelevant, and incompetent. In our opinion these assignments of error are without merit and are overruled.

The movant's assignments of error Nos. 20 and 21 are to findings of fact Nos. 24 and 31. The movant contends that the court should have found that L. S. Blades refused to guarantee title to said lands and that he had received many times the purchase price for the life estate in said tract of land. The movant further contends that there is no evidence to support finding of fact No. 31, to the effect that in the exercise of ordinary business prudence she could have and should have discovered the irregularities of which she complains, at least twenty or more years ago, and should have known that the respondents and their predecessors in title were claiming ownership in fee simple of the lands in question. We think the findings of fact Nos.

24 and 31 are supported by competent evidence and, therefore, overrule these assignments of error.

The additional assignments of error are to finding of fact No. 32, to the effect that L. S. Blades was a *bona fide* purchaser for value of the lands in question, without notice of irregularities in this action of which the movant now complains, and to the conclusions of law and to the judgment entered pursuant thereto. In our opinion, these assignments of error are likewise without merit and are overruled.

No irregularity appears on the face of the record with respect to the judgment entered ordering the sale of the property, the sale, or the commissioner's report, or in the confirmation thereof. Neither is there any irregularity appearing on the record in connection with the foreclosure sale of the property in 1923, when the fee simple title to the lands involved was foreclosed and sold for the sum of $8,200 pursuant to the provisions of the deed of trust executed by Sarah E. Menzel and her husband on 16 May 1917 and duly registered in the office of the Register of Deeds of Camden County, North Carolina, on 28 May 1917.

It is well established in this jurisdiction that " * * * (I)n the absence of fraud or the knowledge of fraud, one who purchases at a judicial sale, or who purchased from one who purchased at such sale, is required only to look to the proceeding to see if the court had jurisdiction of the parties and of the subject matter of the proceeding and that the judgment on its face authorized the sale. *Graham v. Floyd*, 214 N.C. 77, 197 S.E. 873 * * *." *Cherry v. Woolard*, 244 N.C. 603, 94 S.E. 2d 562; *Franklin County v. Jones, supra.*

The contention that the description in the commissioner's deed was insufficient to convey the lands involved is untenable. The deed conveys "all the lands described * * * in the last will and testment of Bailey J. Overton, and more particularly described in the following deeds": (then follows a list of nine deeds executed by various grantors to Bailey J. Overton; in all but two of these deeds the book and page where the respective deeds were registered in Camden County were given. In one of the deeds the names of the grantors were given and the year the deed was executed, but the book and page where the deed was registered were not given. In the other deed the names of the grantors were given and the book where the deed was registered, but not the page in said book.) Following the listing of the above deeds there appears the following: "Together with all other lands of which said Bailey J. Overton died seized and possessed in Camden County."

Nothing in the hearing below challenged the accuracy of the survey

which Dr. L. S. Blades had made of the listed tracts of land or the correctness of the map of such lands recorded in Plat Book 1, at page 21, in the office of the Register of Deeds of Camden County. Moreover, the parties in the hearing below informed the court that the lands in controversy consisted of 426 acres.

That is certain which can be made certain, and lands may be conveyed by reference to an identifiable source of title. We so held in *Peel v. Calais,* 224 N.C. 421, 31 S.E. 2d 440, and in *Moore v. Fowle,* 139 N.C. 51, 51 S.E. 796.

As pointed out by Judge Bone in finding of fact No. 30, Sarah E. Menzel asserted in her affidavit that her husband practiced a fraud upon her; she did not, however, give any particulars as to what the fraudulent acts or representations were. Moreover, the judgment confirming the sale of the lands involved constituted a final judgment. *McLaurin v. McLaurin,* 106 N.C. 331, 10 S.E. 1056. Therefore, any statement or inference with respect to fraud in connection with the movant's motion in this cause is mere surplusage. *Carter v. Rountree,* 109 N.C. 29, 13 S.E. 716.

In the last cited case, it is said: "It is well settled that pending an action before the final judgment an interlocutory order or judgment may be attacked for fraud by a motion or proceeding in the action, but after the final judgment the remedy for fraud is by an independent action brought for the purpose." McIntosh, North Carolina Practice & Procedure, 2nd Ed., Vol. 2, section 1718; *Burgess v. Kirby,* 94 N.C. 575; *McLaurin v. McLaurin, supra.*

The lapse of time will not bar the right to move to vacate a void judgment. *Monroe v. Niven,* 221 N.C. 362, 20 S.E. 2d 311. On the other hand, all our decisions seem to hold that a motion to set aside a voidable or irregular judgment must be made within a reasonable time.

In *Glisson v. Glisson, supra,* a proceeding to sell lands to create assets to pay debts was instituted. The petitioners were never served with summons but a guardian *ad litem* was appointed. The decree authorizing the sale was entered on 9 February 1883. The motion in the cause to set aside the judgment was made on 16 December 1908. This Court said: "It is true that courts have power to correct their records and set aside irregular judgments at any time, but it is settled practice that they will not exercise the power where there has been long delay or unexplained and unwarranted laches on the part of those seeking relief against the judgment."

In *Harrison v. Harrison,* 106 N.C. 282, 11 S.E. 356, a proceeding was instituted by the administrator to create assets for the payment

of debts. The sale took place in 1870. No service of any kind was made on the heirs of the decedent, nor was a guardian *ad litem* appointed for the infant heirs. This Court held that the motion to set aside the decree should be granted on the ground that the proceeding was utterly void and the lapse of nineteen years could not make it valid. The rights of the purchaser at the sale were left undetermined.

In *Harrison v. Hargrove,* 109 N.C. 346, 13 S.E. 939, in an ejectment proceeding a new trial was granted in order to give the plaintiffs an opportunity to explain the delay of nineteen years. The Court said: "The decree and sale were made in 1870, and this action was brought in 1887. The motion to set aside the decree was made in 1889, and thus we have seventeen years or more of inaction on the part of the plaintiffs, who during this time were under no disabilities whatever. In addition to this, the purchaser was in possession of the property, and there is evidence showing that these plaintiffs with their mother lived about three hundred yards distance on an adjacent tract. It is true that the mother, under the will, had a life estate in the land and that she did not die until 1887. * * * These plaintiffs having a right to be supported from said land during the life of their mother, and also entitled in remainder, could have moved to set aside the decree at any time after it was rendered, for some cause, they failed to do so until 1889.

"Taking these circumstances, together with the fact that they must have known of the long and adverse possession by the defendant of the adjoining land, and we are entirely clear that we should not exercise this '*quasi* equitable' (Black on Judgments, *supra*), power of the court and grant the plaintiffs relief as upon setting aside the decree."

The new trial resulted in a verdict in favor of the innocent purchaser for value. The plaintiffs appealed and this Court affirmed. See *Harrison v. Hargrove,* 120 N.C. 96, 26 S.E. 936, 58 Am. St. Rep. 781.

In the present cause the judgment confirming the sale of the lands in controversy was entered in 1913, forty-five years before the movant filed her motion, and thirty-one years after she became of age. In view of the finding that L. S. Blades was a *bona fide* purchaser of the lands involved, without notice of the irregularities of which the movant complains, in our opinion she is not entitled to the relief she seeks. *Morris v. Gentry,* 89 N.C. 248; *Harrison v. Hargrove, supra Glisson v. Glisson, supra; Rawls v. Henries,* 172 N.C. 216, 90 S.E. 140; *Wynne v. Conrad,* 220 N.C. 355, 17 S.E. 2d 514; *Gardner v. Price,* 242 N.C. 592, 89 S.E. 2d 147.

It is true that the statute of limitations in an ejectment action

does not begin to run against the remainderman until the death of the life tenant. "This does not mean, however, that such remainderman may not move to vacate a void or voidable judgment until after the expiration of the life estate. This he may do at any time if the action is taken seasonably and laches cannot be imputed to him." *Narron v. Musgrave*, 236 N.C. 388, 73 S.E. 2d 6. See also *Harris v. Bennett*, 160. N.C. 339, 76 S.E. 217.

It will be noted that the movant did not except to or assign as error findings of fact Nos. 1, 2, 3, 6, 7, 8, 9, 16, 17, 18, 23, 25, 26, 27, 28, 29, 30 or 33.

The judgment entered below will be upheld.

Affirmed.